Dear Dr. Scafidel:
You have requested an opinion of this Office as to the viability of a lease entered into by the St. Bernard Port, Harbor and Terminal District ("the District") and Metal Pro Industries ("Metal Pro" or "the lessee") following damage to the facilities from the 2005 hurricane season and a subsequent apparent abandonment of the premises by the lessee. Basically, you want to know if the District must continue to honor the lease in the absence of use, activity, and repairs on the part of the lessee.
We here analyze this question, but render our opinion with the following cave at. An inquiry into whether or not a party has a duty to honor a particular lease is largely a factual inquiry. Such matters are properly considered by a court of law. Thus, while we can opine as to the rights and duties of a party to a lease, such an opinion does not have the force and effect of law as does the judgment of a court. As we suggested in La. Atty. Gen. Op. No. 93-479, perhaps "it would seem . . . prudent and definitive to . . . obtain a declaratory judgment. . . from a court of law having jurisdiction over the [matter]." This course of action would seem to be the most sensible since (now paraphrasing La. Atty. Gen. Op. No. 93-479), without a court judgment delineating the effects of the particular lease, the question as to whether the lease continues to have legal effect might remain in doubt.
The relevant details of the lease and the events that led to the current opinion request follow. The District and the lessee entered into the subject lease in2002. The lessee agreed to construct a substantial industrial facility on the leased property, "for the purpose of manufacturing, selling, and distributing metal components, buildings, houses, barns, sheds, roofs, and insulation for the Residential, Commercial and Industrial Building Industry. . ." Lease Agreement at1-2. As we understand the facts of this matter, the facility was constructed and was in operation at the time that Hurricane Katrina struck the State in August of2005. The facility sustained substantial damage from the storm. However, no *Page 2 
attempt to repair or reopen the facility has yet been undertaken. The District would like to know if such inaction on the part of the lessee is tantamount to a breach of the lease. Should the lease be invalid, it is likely that the District can release the property and return the facility to use.
The lease itself, which has an initial term of thirty (30) years, stipulates that no rent is to be paid to the District for the initial term. In lieu of the rent, the District expected to receive, upon termination of the lease in 2032, the facilities constructed thereon by the lessee (which are valued at an estimated minimum of$3.5 million) would inure to the District. Additionally, the District had a substantial interest in stimulating employment growth in St. Bernard Parish, an end that surely would be met through the construction and operation of a facility such as the one built by the lessee.
One initial matter that we must consider regarding the validity of the subject lease is whether it constitutes an improper donation of public assets under La. Const. Art. VII, Sec. 14. Because no rent was required of the lessee for the initial term of the lease and because it is speculative, at best, that the condition of the constructions on the leased property will be commensurate with the value of the foregone lease payments over the term of the lease this situation is questionable under La. Const. Art. VII, Sec. 14.That constitutional provision states, in pertinent part, that,
 [e]xcept as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private.
La. Const. Art. VII, Sec. 14(A). It has long been the opinion of this Office that this constitutional provision is violated if a political subdivision of the State donated State assets without a legal obligation to do so. See e.g., La. Atty. Gen. Op. No. 05-0037 (citing City of PortAllen v. Louisiana Municipal Risk Agency, 439 So.2d399 (La. 1983)). The case that that opinion and many others of this Office was based on,City of Port Allen, supra, has now been overruled by the Louisiana Supreme Court. See, Board of Directors of the Industrial DevelopmentBoard of the City of Gonzales, Louisiana, Inc. v. All Taxpayers,Property Owners, Citizens of the City of Gonzales, 938 So.2d 11, 23,2005-2298 (La. 9/6/06) (stating that"[t]he statement in City of PortAllen that § 14(A) is violated `whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so' presents an unworkable and incorrect interpretation of La. Const. art. VII, § (A) [sic]. Consequently, we repudiate that interpretation of § 14(A). We find instead that § 14(A) is violated when public funds or property are gratuitously alienated."). *Page 3 
Although we may have been of the opinion that the speculative nature of there turn anticipated by the District under the lease (i.e., the fact that, in 2032, the District may receive thirty-year-old buildings that may or may not be equal to the value of the rental payments that the District had foregone for that period) would have constituted an improper donation of State assets under City of Port Allen, supra, we are hard-pressed to reach the same conclusion following the Louisian a Supreme Court's opinion in Board of Directors, supra. Although the return anticipated by the District when the lease was perfected may have been speculative, the expectation appears to have been that the return would be substantial. In our opinion, such a situation appears to make the lease valid under Board of Directors, supra, as the property was not "gratuitously alienated."Id. at 23. Thus, it is our opinion that the lease does not constitute an invalid donation under La. Const. Art. VII, Sec. 14.
Because we are of the opinion that the lease does not violate La. Const. Art. VII, Sec. 14, we now turn to the terms of the lease itself in an effort to determine the viability of the lease on its own. As an initial matter, because leases are a type of obligation (a nominate contract), La. C.C. Art. 1914, it is important to examine the cause of the obligation that underlies the lease. Cause is defined, in La. C.C. Art. 1967, as "the reason why a party obligates himself," and it is a necessary component of an obligation. La. C.C. Art. 1966. Cause has been aptly elaborated upon by Dr. Saúl Litvin off thus,
 since not just any of a party's motives to bind himself through an obligation can be regarded as the cause, but only that motive that is either understood through communication or presumed from the circumstances, `reason' is perhaps the better word than `motive' for a definition of cause.
Saúl Litvinoff, Still Another Look at Cause, 48 LA. L. REV. 3, 18 (1987). The latter point that cause need not be communicated to be valid is derives from La. C.C. Art. 1969.
The cause, or reason, that Metal Pro obligated itself under the subject lease is fairly clear: It is a business and the lease would facilitate its financial success. The cause for the District is that it expected to receive the substantial improvements constructed by Metal Pro on its property at the termination of the lease. The District also, as noted above, had an interest in stimulating job growth in the area. However, the latter does not appear to be the sole or even the primary reason that the District obligated itself as less or under the subject contract. None of these causes are explicitly stated in the lease. Based up on La. C.C. Art. 1969, though, it is our opinion that these unstated causes are still valid even though they are not explicit in the lease and therefore, they must continue to exist in order to ensure the viability of the lease itself. *Page 4 
Due to the damage sustained to the facilities constructed by the lessee during the hurricane season of 2005, grave doubt is cast on whether the District's cause for obligating itself under the lease has survived. As we appreciate the current situation, the structures constructed by lessee remain, more than a year after the devastating storms, unoccupied and unused. Additionally, there appears to have been no attempt to repair the facilities. Thus, rather than receiving functional improvements at the termination of the lease, the District now stands to inherit derelict facilities that will be its responsibility to either repair or demolish. Such a scenario certainly would not support the cause of the District, which thought that it would be obtaining usable improvements in 2032 in exchange for not charging rent on the property for the duration of the initial lease. Thus, it is our opinion that the cause of the District's obligation under the lease has failed.
We find the writings of Dr. Litvinoff particularly instructive as to the implications of a failed cause. "A cause may exist at the inception of an obligation and then fail. When such is the case the obligation ceases to exist when its cause fails. "Litvinoff, supra, at 7. It is thus our opinion that the District's obligation under the lease has failed due to the failure of its cause and that the lease itself is no longer enforceable. As if the above quote was not enough to support our conclusion, Dr. Litvin off offers the following example, which we find particularly relevant to the current matter.
 A cause may fail only in part. Thus, if a leased thing is only partially destroyed, if the reason to bind himself to pay rent was not to obtain the enjoyment of only the whole thing, the lessee may accept an obligation to pay a reduced rent commensurate with that portion of the thing which subsists.
Id. at 8. A fortiori, since no rent was being paid and the rent was not the cause for the District's obligation, the District is left with nothing to support its adherence to the lease. It was precisely the District's cause "to obtain the enjoyment of the whole thing" upon the termination of the lease. Because the lessee seems to have no intention of making the "whole thing" whole again, it is our opinion that the cause must fail.
The lessee has additional problems with the current enforceability of the lease. The lease contains very specific language that requires the lessee to " at its own expense, complete all work, including any necessary repairs and/or modifications " Lease Agreement at 6. Additionally, "[l]essee shall maintain the leased premises in a clean and orderly manner, maintain the grounds, not allow the accumulation of trash or debris to remain for long periods of time." Id. at 8. It is apparent that no repairs have been conducted and that the premises has not been maintained in accordance with the terms of the lease. For those reasons, we opine that the lessee has breached the terms of the lease. *Page 5 
Finally, "[t]he Buildings and `Premises' shall be insured by Lessee at its sole cost. . . ." Id. at 19. Any funds received for damages to the premises or its improvements "shall go directly to rebuilding or repairing the building or buildings damaged without delay." Id. It has been more than a year since the 2005 hurricanes. It is apparent that the lessee has also derogated its duty with respect to the insurance provisions of the lease. Without the actual facts, we cannot be certain of a breach of these provisions by the lessee. However, it is strongly suggestive of a breach that, in more than a year, no noticeable efforts have been made to evidence a usage of insurance proceeds for the repair of the premises or improvements thereon. We should note that the lease does contain specific provisions for the District to place the lessee in default. These provisions are contained within Paragraph 20 on pages 17 and 18 of the lease. We strongly suggest that these provisions be adhered to in order to avoid incurring damages on the part of the District. Additionally, as we noted at the outset of this opinion, we strongly recommend that the District seek a declaratory judgment on the viability of this lease before proceeding with any action against the lessee.
We hope this sufficiently answers your inquiry, however if we may be of further assistance please do not hesitate to contact our office.
 Sincerely yours,
 CHARLES C. FOTI, JR.
 ATTORNEY GENERAL
 By:
 RYAN M. SEIDEMANN
 Assistant Attorney General
 CCF, Jr./RMS/tp